**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

**IN RE JONES CONSTRUCTION & RENOVATION, INC.,**

    Debtor                                                                Case No. 05-31107-DOT
                                                                                                                 Chapter 7

**MEMORANDUM OPINION**

Hearing was held October 12, 2005, on the motion of Western Surety Company to approve payment to it of contract funds arising under two pre-petition construction contracts of the debtor, Jones Construction & Renovation, Inc. Western Surety also asserts its right to debtor's claim against the owners of one of the projects, Christopher Newport University. The trustee opposes the motion. Following argument at hearing, the court reserved ruling and requested the parties to submit proposed findings of fact and conclusions of law, which have now been received.

For reasons stated in this opinion, the court adopts the position asserted by Western Surety and will grant its motion.

Facts.

Pre-petition, debtor Jones Construction & Renovations, Inc., engaged in a general contracting business. The issues in this case arise from two public construction projects that Jones Construction contracted to perform and for which the company contracted with Western Surety to underwrite the requisite payment and performance bonds.

Payment and performance bonds on the two projects were issued by Western Surety, as surety, naming Jones Construction as its principal and co-obligor and the property owners as obligees. Each of the performance bonds was issued to secure Jones Construction's performance of its obligations to the owner under the general contract for which it was issued, and each of the payment bonds was issued for the protection of all persons who might qualify as claimants for labor or materials furnished directly to Jones Construction or one of its subcontractors.

The construction contracts at issue here are (1) the Christopher Newport University (CNU) Football Stadium Project, awarded to Jones Construction on January 28, 2003, for which Western Surety issued Bond No. 58607433 dated January 31, 2003, in the amount of $1,439,500.00; and (2) the Henrico Area Mental Health Project for Henrico County, Virginia, awarded to Jones Construction on February 4, 2003, for which Western Surety issued Bond No. 58607439 dated February 4, 2003, in the amount of $638,599.00. In each instance, the bonds were requested by Jones Construction, issued by Western Surety, and furnished by Jones Construction to the respective obligees in accordance with the terms and conditions of the general contracts for which they were issued and the provisions of Virginia's <u>Little Miller Act</u>, Virginia Code §§ 2.2-4336 to 2.2-4342, a part of the <u>Virginia Public Procurement Act</u>, Virginia Code §§ 2.2-4300 et seq.

Western Surety's bonds on these projects were issued in accordance with a general agreement of indemnity with Jones Construction dated November 13, 2002. Under this agreement, Jones Construction bound itself to indemnify Western Surety and to hold it harmless from and against all demands of whatever nature as a result of Western Surety's issuance of bonds. Jones Construction secured its performance under the surety agreement, pursuant to

paragraph 19 of the agreement, by executing a security agreement and financing statement. Under this security agreement, the agreement of indemnity was recorded as an original financing statement on February 17, 2004, under the provisions of the UCC, Virginia Code §§ 8.9-101 et seq.[1]

In addition, pursuant to paragraph 9 of the indemnity agreement, Jones Construction assigned to Western Surety its rights under any underwritten construction contract. This assignment clause provided for the transfer to Western Surety, upon Jones Construction's default, of all sums due under the contracts, including any remaining contract funds held by the obligors under the contracts.

After executing the construction contracts, Jones Construction encountered financial problems, which would later cause it to file bankruptcy. On November 17, 2003, Western Surety received a claim from United Rentals, Inc., against the contract payment bond for the CNU Football Stadium Project in the amount of $23,030.62.[2] Western Surety later received several other claims due to the inability of Jones

---

[1] As a preliminary matter, the trustee asserts that to the extent Western Surety seeks through its motion to obtain the funds held by the project owners as a secured creditor based on its claim of a security interest under the indemnity agreement, such a determination should have been made upon the filing of a motion for relief from the automatic stay. For reasons discussed in the opinion, the court finds that Western Surety has the right to the remaining contract funds based on grounds other than its security interest. Therefore, Western Surety's motion is appropriately before the court, and a motion for relief from stay is unnecessary.

[2] Jones Construction's failure to pay United Rentals, Inc. constituted an event of default as defined by paragraph 8 of the indemnity agreement, automatically vesting rights in Western Surety pursuant to paragraph 9.

Construction to satisfy many of its payment obligations under the CNU project to subcontractors, laborers and materialmen. By February 8, 2005, Western Surety had paid claims in connection with the CNU project in at least the amount of $334,879.00 and had $120,216.72 in claims pending. Although no claims have been paid on the Henrico project, Western Surety has been presented with four claims from that project totaling $44,348.03.

On February 8, 2005, Jones Construction filed this voluntary chapter 7 case, and Harry Shaia, Jr., was appointed trustee. The creditor schedules of the petition list Western Security as an unsecured creditor with a claim in an unknown value. The personal property schedules list approximately $1,450,000.00 of accounts receivables arising from the CNU and Henrico projects; this figure consists of a balance of $50,000.00 due from Henrico County and a balance of $1,400,000.00 owed by CNU. The Henrico receivable is for remaining contract funds held by the county in the actual amount of $49,669.02. The CNU receivable includes funds held by CNU in the undisputed principal amount of $152,054.93 for approved change orders, and the balance is a pre-petition claim by Jones Construction for additional compensation, including extra work and unapproved change orders. This claim, in the amount of $1,210,608.50, has not been approved for payment by CNU. Western Surety's right to the CNU claim is the second contested issue in this case.

## Conclusions of Law.

Western Surety asserts that neither the remaining contract funds nor the pre-petition claim Jones Construction filed against CNU constitute property of the estate in which the trustee

holds an interest by virtue of the assignment provisions in the indemnity agreement and the doctrine of equitable subrogation.[3]

The trustee does not dispute that, under the doctrine of equitable subrogation, Western Surety is entitled to the $152,054.93 in remaining contract funds held by CNU. He does dispute that under the doctrine of equitable subrogation, Western Surety is entitled to the $49,669.02 held by Henrico County because, although Western Surety has received claims on that project, it has yet to sustain a loss. The trustee also disputes Western Surety's rights by assignment to the $49,669.02 held by Henrico County and the debtor's pre-petition claim against CNU. He asserts the assignments contained in paragraph 9 of the indemnity agreement are nothing more than a mere security interest in an assignment of collateral.

The court agrees with the legal analysis presented by Western Surety in its proposed conclusions of law concerning Western Surety's rights under the doctrine of equitable subrogation and by assignment under the indemnity agreement.

---

[3] As a preliminary matter, the trustee asserts that to the extent Western Surety seeks through its motion a determination of entitlement to remaining contract funds held by Henrico County and CNU based on an allegation that these funds are not property of the estate, such a determination should be made through an adversary proceeding seeking a declaratory judgment naming Henrico County and CNU as parties. The court finds that the parties were provided with the same procedural safeguards concerning notice and an opportunity to be heard that they would have enjoyed had an adversary proceeding been filed. As the due process requirement has been met, there is no need to refrain from ruling on Western Surety's motion, which has already been argued before the court. However, if the trustee can demonstrate that he has been prejudiced by this matter not being brought as an adversary proceeding, the court will reconsider.

WESTERN SURETY'S RIGHT TO EQUITABLE SUBROGATION

The doctrine of equitable subrogation "arises when a contractor defaults on its obligations and a surety completes the work called for by the contract [or] pays all of the related bills." In re Labar Corp., 177 F.3d 439 (6th Cir. 1999). "The law is clear that a surety under these circumstances has a right to the payments due the contractor to the extent of full reimbursement." Id. (citing Pearlman v. Reliance Ins. Co.; 371 U.S. 132 (1962), Prairie State Bank v. United States, 164 U.S. 227 (1896)). Because Western Surety has paid claims in excess of the $152,054.93 in remaining funds being held by CNU, under the doctrine of equitable subrogation, Western Surety possesses the right to these funds.

"Moreover, this right relates back to the date of the surety's issuance of bonds for the contract." Id. (citing Prairie State, 164 U.S. at 240; Nat'l Surety Corp. v. United States, 118 F.3d 1542, 1546 (Fed. Cir. 1997)). This supports Western Surety's position that the remaining contract funds being held by CNU do not constitute property of the estate, as the right to the funds vested in Western Surety under this doctrine before Jones Construction filed its chapter 7 petition. The trustee therefore does not have an interest in these funds. As the Supreme Court observed in Pearlman,

> Property interests in a fund not owned by a bankrupt at the time of adjudication, whether complete or partial, legal or equitable, mortgages, liens, or simple priority of rights, are of course not a part of the bankrupt's property and do not vest in the trustee. The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors.

371 U.S. at 135-36; see Mid-Atlantic Supply, Inc. v. Three Rivers Aluminum Co., 790 F.2d 1121, 1124 (4th Cir. 1986) (citing S. REP. NO. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S.C.C.A.N. 5787, 5868) (under 541(d), property of the estate does not include property debtor

does not hold in his own right and "trustee can take no greater rights than the debtor himself had").

The doctrine of equitable subrogation has been applied to preclude the turnover of funds held by a project owner to the trustee when the principal has breached its obligation to the project owner. In In re Pacific Marine Dredging and Construction, 79 B.R. 924, 929 (Bankr. D. Or. 1987), the court held that a contractor who failed to pay labor and material obligations breached its contract and had no legal or equitable interest in withheld funds and therefore the funds were not property of the bankruptcy estate. The Third Circuit made a similar ruling in In re Modular Structures, Inc., 27 F.3d 72 (3rd Cir. 1994), holding that because the contractor had not paid its subcontractors, it had no right to contract funds held by the project owner and therefore the project owner was not obligated to pay the funds into the bankruptcy court.

In this case, Jones Construction has failed to fulfill various payment obligations to subcontractors, laborers and materialmen on the Henrico Area Mental Health Project. By virtue of this failure, Jones Construction has breached its contract with Henrico County. It has also violated the prompt payment provisions of the Virginia Public Procurement Act, Virginia Code §§ 2.2-4300 et seq.[4] As such, Western Surety, as Jones Construction's contract bond surety, is entitled to have those funds dedicated first to reimburse it for any payments it makes under the

---

[4] Under Virginia Code § 2.2-4354, Jones Construction, as a general contractor on a public project, is obligated either (1) to pay its subcontractors, suppliers and materialmen for the proportionate share of the total payment received from Henrico County attributable to the work each performed, or (2) to notify Henrico County and each of the subcontractors, suppliers and materialmen affected, in writing, of its intention to withhold all or a part of their payment with the reason for non-payment.

bond, with any excess belonging to the bankruptcy estate. The same is true for the CNU Football Stadium Project.

As Jones Construction possesses no interest in or right to the remaining contract funds on either the CNU Football Stadium Project or the Henrico Area Mental Health Project to the extent they are dedicated to reimburse Western Surety for any outlay, the funds are not property of the bankruptcy estate. Pre-petition, Western Surety paid claims on the CNU Football Stadium Project in at least the amount of $334,879.00, and it is entitled to receive the sum of $152,054.93 being held by CNU. Moreover, because Jones Construction has failed to pay its subcontractors, laborers and materialmen on both projects, neither CNU nor Henrico County are obligated to turn the funds over to the trustee. Furthermore, as Western Surety has received and has claims pending in the amount of at least $120,216.72 on the CNU Project and $44,348.03 on the Henrico Project, Jones Construction has no right to remaining contract funds to the extent they will be used to reimburse Western Surety for those pending claims, and neither CNU nor Henrico County can be compelled to turn the funds over to the bankruptcy estate.

The trustee cites In re Caddie Construction, 125 B.R. 675, 678 (N.D. Fla. 1991), for the proposition that Western Surety may not invoke the doctrine of equitable subrogation to obtain funds from Henrico County because it has not paid any of the claims presented to it under the bond. The trustee fails to account for the body of case law that holds when a debtor contractor breaches its contract with a project owner, it precludes debtor's entitlement to retained funds, and thus these funds are not property of the estate. See, e.g., In re Modular Structures, 27 F.3d at 72; In re Pacific Marine, 79 B.R. at 929. The court is less concerned with whether payment has yet been made than with Western Surety's obligation to pay claimants. It is this obligation, brought

8

about by Jones Construction's breach of contract, that makes the doctrine of equitable subrogation applicable. Western Surety is therefore entitled to any funds that may hereafter become due on the CNU project to reimburse it for any losses it has sustained that are not satisfied by the $152,054.93 currently being held. It is also entitled to any remaining contract funds on the Henrico project to reimburse it for any payments it makes under the bond to satisfy the claims on that project. Any remaining contract funds exceeding Western Surety's payments on claims under the bonds are property of the estate and should be turned over to the trustee.

WESTERN SURETY'S ASSIGNMENT

Sureties are entitled to claim rights arising by operation of law and under the assignment clause of their indemnity agreements. Plant Process Equip., Inc. v. Continental Carbonic Prods., Inc., 1994 WL 201218 at 3, n.7 (N.D. Ill 1994) (citing Armen Shahninian, The General Agreement of Indemnity in THE LAW OF SURETYSHIP, 27-3 to 21-21 (ABA Tort & Ins. Prac. Sec., Gallagher, E., ed. 1993). Moreover, when an express indemnification agreement exists, "'a surety is entitled to stand upon the letter of his contract.'" Fidelity and Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160 (C.A. Va. 1983) (quoting Commercial Ins. Co. of Newark v. Pacific-Peru Const., 558 F.2d 948, 953 (9th Cir. 1977)). Therefore, although Western Surety enjoys the rights of equitable subrogation, it is also entitled to enhance and supplement those rights through the use of the assignment provisions of the indemnity agreement.

Under 11 U.S.C. § 541(a)(1), all legal or equitable interests of the debtor in property as of the commencement of the case become property of the bankruptcy estate. The decision as to whether a debtor's interest constitutes "property of the estate" is a federal question. Charles R.

Hall Motors, Inc. v. Lewis (In re Lewis), 137 F.3d 1280, 1283 (11th Cir. 1998) (citing Southtrust Bank of Alabama v. Thomas (In re Thomas), 883 F.2d 991, 995 (11th Cir. 1989), cert. denied, 497 U.S. 1007 (1990)); see 11 U.S.C. § 541(a)(1).  "However, 'the nature and existence of the [debtor's] right to property is determined by looking at state law.'" Id. (citing Thomas, 883 F.32d at 995); see Butner v. United States, 440 U.S. 48, 55 (1979); Universal Coops., Inc. v. FCX, Inc. (In re FCX, Inc.), 853 F.2d 1149, 1153 (4th Cir. 1988), cert denied, 489 U.S. 1011 (1989).  The determination of whether property is in fact property of the estate is crucial because "the Bankruptcy [Code] does not authorize a trustee to distribute other people's property among a [debtor's] creditors." Pearlman, 371 U.S. at 136.

Any rights Jones Construction had to receive the funds currently held by CNU and Henrico County were originally created when Jones Construction entered into the general contracts to perform the construction on the CNU Football Stadium Project and the Henrico Area Mental Health Project, respectively.  Under the terms and conditions of each contract and the provisions of Virginia's Little Miller Act, Virginia Code §§ 2.2-4336 to 2.2-4342, Jones Construction was required to furnish its contract payment and performance bonds to CNU and Henrico County.  To induce Western Surety to serve as its surety and assume all concomitant risks, Jones Construction agreed to exonerate and indemnify Western Surety, and to hold it harmless from all claims of whatever nature as a result of Western Surety's issuance of the bonds.  Under the indemnity agreement, Jones Construction assigned to Western Surety all the rights that Jones Construction had "under the contract(s), including their right, title and interest

in … any and all sums due under the contract(s) at the time of such default, or which may thereafter become due."[5]

Under Virginia law, contract rights are freely assignable, and assignments are valid unless the contract involves obligations of a personal nature, the assignment is against public policy or the assignment is specifically prohibited by contract. See Stone St. Capital, Inc. v. Granati (In re Granati), 270 B.R. 575, 581-82 (E.D. Va. 2001); Bunn v. Offutt, 222 S.E.2d 522 (Va. 1976); Dove Co. v. New River Coal Co., 143 S.E. 317 (Va. 1928). No such limitations exist in the instant case. Neither the project contracts nor the indemnity agreement is a personal services contract, there is no public policy against such an assignment, and there is no provision in any of the relevant contracts prohibiting this type of assignment. In fact, the indemnity agreement's terms unambiguously assign to Western Surety all rights Jones Construction had under the contracts for which it issued bonds. The assignment of rights under both of the general contracts, therefore, is valid under Virginia law.

The fact that the assignment of rights at issue took place pre-petition and not by some operation of bankruptcy law does not require a different result. This court has found that pre-

---

[5] The trustee argues that pursuant to paragraph 19, conveying the right to use the indemnity agreement as a security interest, that the indemnity agreement and the assignments conveyed by paragraph 9 constitute nothing more than a mere security interest in an assignment. However, the rights and interests conveyed by the Assignment Clause in paragraph 9 are assigned without qualification and are whole and complete in and of themselves; they are not described as mere collateral. Had Western Surety and Jones Construction elected to somehow qualify the assignment, they could have so provided. Compare Hutton Constr. Co., Inc. v. County of Rockland, 1993 WL 535012 at 2 (S.D.N.Y. 1993) with Hugh W. Levey and Contee Fin. Corp. v. E. Stewart Mitchell, Inc., 762 F.2d 998 (4th Cir. 1985) (unpublished opinion).

petition assignments are valid, and the proceeds of any assignment that vests rights in the assignee pre-petition are not property of the estate. See, e.g., Tyler v. Prudoff (In re Prudoff), 186 B.R. 64 (Bankr. E.D. Va. 1995); In re Duty, 78 B.R. 111 (Bankr. E.D. Va. 1987). In Duty, Judge Shelley, citing the seminal surety case of Pearlman, concluded that a debtor's pre-petition assignment to Johnston-Willis Hospital, while he was in need of medical care, of all his rights to receive settlement proceeds from a personal injury matter vested in the hospital, and as a result the proceeds were not assets of the bankruptcy estate. In reaching its decision, the court observed that "[i]t is well established law that the trustee in bankruptcy takes only the title of the debtor in property of the estate." Id. at 117 (citing Pearlman, 771 U.S. 132). The court also concluded that "the trustee could not avoid Johnston-Willis' interest . . . because Johnston-Willis is not asserting a lien on the proceeds, but rather an ownership interest through the assignment that vested prior to [the debtor's] filing." Id. The court observed that in order for an assignment to be valid, it must be made with the requisite intent. The assignor "must have intended, at the time of the transfer, to dispossess himself of an identified interest, or some part thereof, and to vest indefeasible title in the transferee." Id. at 115 (citing Kelly Health Care, Inc. v. Prudential Ins. Co., 309 S.E.2d 305, 307 (1983); RESTATEMENT (SECOND) OF CONTRACTS § 317(1) (1981)).

      The principles set forth in Duty and the court's analyses are applicable to the instant case. The trustee here cannot avoid Western Surety's interest in the rights assigned, including all rights under the CNU and Henrico contracts, and the rights to all remaining contract funds due or to become due because, as in Duty, Western Surety is not asserting a lien on the proceeds, but rather an ownership interest in the funds being held by the project owners. Jones Construction executed the indemnity agreement and conveyed the assignments in question, was in need of

contract payment and performance bonds in order to comply with the provisions of the general contracts with which it had been awarded and Virginia Code §§ 2.2-4366 to 2.2-4342, and intended to make the assignments in consideration for Western Surety's commitment to serve as Jones Construction's surety and issue bonds. As a result, the requisite intent for a valid assignment is met, and all rights Jones Construction had under the contracts, including the right to receive payments under the construction contracts, were effectively assigned and title transferred prior to the filing of the petition. As such, the rights conveyed by assignment in the indemnity agreement were transferred upon the event of default,[6] became vested in Western Surety and never became property of the estate except as limited below.

Consequently, in addition to its rights under the doctrine of equitable subrogation, and by virtue of Jones Construction's assignments to Western Surety under the indemnity agreement, Western Surety also has an ownership interest in and is entitled to pursue and collect, without intervention by the trustee, (1) the $152,054.93 in remaining contract funds currently held by CNU in connection with the CNU Football Stadium Project, (2) the $49,669.02 in remaining contract funds currently held by Henrico County in connection with the Henrico Area Mental Health Project, and (3) the pre-petition claim Jones Construction asserted against CNU on March 26, 2004, seeking additional compensation and damages in the amount of $1,210,608.50. Although the assignment of rights was absolute, in the interest of equity, any funds collected by

---

[6] See supra, note 3 for a description of the event of default that occurred, thus triggering the transfer of rights pursuant to the indemnity agreement.

Western Surety in excess of Western Surety's obligations under the bonds are an asset of the bankruptcy estate and must be turned over to the trustee.[7]

Accordingly, a separate order consistent with this memorandum opinion will be entered by the court.

Signed:

/s/ Douglas O. Tice Jr.
DOUGLAS O. TICE JR.
CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

---

[7] For example, Western Surety has claims pending in the amount of $44,348.03 on the Henrico project; however, Henrico County is holding $49,669.02 in remaining contract funds. Therefore, the trustee is entitled to $5,320.99, the balance of the contract funds in excess of Western Surety's obligation. At hearing, Western Surety indicated that if successful on the motion, the claim against CNU would be used as leverage to negotiate payment to reimburse it for claims paid exceeding the amount of the remaining contract funds. Western Surety has paid claims in the amount of $334,879.00 and has claims pending in the amount of at least $120,216.72 on the CNU project. The remaining contract funds being held by CNU will reimburse it for $152,054.93, leaving a shortfall of at least $303, 040.79. Western Surety may pursue the March 26, 2004, claim against CNU to the extent it allows reimbursement for obligations under the bond. Any excess recovery should be turned over to the trustee. The court suggests that the trustee and Western Surety cooperate in jointly pursuing the claim against CNU.

**Copies to:**

Richard T. Pledger
Christopher T. McGee
WallacePledger, PLLC
The Capstone Center
7100 Forest Avenue, Suite 302
Richmond, Virginia 23227-3743
*Counsel for Western Surety Company*

Robert D. Perrow
Williams Mullen, PC
P.O. box 1320
1021 E. Cary Street
Richmond, Virginia 23218-1320
*Proposed Counsel for Trustee*